

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:19-cv-20012-SCOLA/TORRES

UNITED STATES OF AMERICA,
*ex rel.* [under seal],

        Plaintiffs,

v.

[under seal],

        Defendants.

FILED UNDER SEAL
PURSUANT TO
31 U.S.C. § 3730(b)2

DEMAND FOR JURY TRIAL

## AMENDED *QUI TAM* COMPLAINT

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:19-cv-20012-SCOLA/TORRES

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* LIDA ORTIZ<br><br>Plaintiffs,<br><br>v.<br><br>IEC CORPORATION d/b/a FLORIDA CAREER COLLEGE, INTERNATIONAL EDUCATION CORPORATION and FLORIDA CAREER COLLEGE INC.,<br><br>Defendants. | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)2**<br><br>**DEMAND FOR JURY TRIAL** |

## AMENDED *QUI TAM* COMPLAINT

On behalf of the United States of America, Relator Lida Ortiz ("Relator") brings this Amended *Qui Tam* Complaint against Defendants IEC CORPORATION d/b/a FLORIDA CAREER COLLEGE, INTERNATIONAL EDUCATION CORPORATION and FLORIDA CAREER COLLEGE INC., (hereinafter "Defendants") and alleges as follows:

**I.   INTRODUCTION**

1.   This is an action to recover treble damages and civil penalties on behalf of the United States of America arising from false statements or records and false or fraudulent claims made or caused to be made by IEC CORPORATION d/b/a FLORIDA CAREER COLLEGE, INC., INTERNATIONAL EDUCATION CORPORATION and FLORIDA CAREER COLLEGE INC. (collectively "Defendants") in violation of the False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA").

1

2. At issue are false claims and statements submitted by Defendants to the United States Department of Education to participate in federal and state programs for financial aid for students at the Defendants' post-secondary educational campuses.

3. Relator seeks to recover on behalf of the United States and the, damages and civil penalties arising from false and improper claims for payment that Defendants submitted or caused to be submitted in connection with student loan and grant applications under Title IV of the Higher Education Act of 1965 ("HEA") and related state statutes from at least August 2017 to the present.

4. The estimated total damages to the Plaintiffs from these false and fraudulent claims and statements are significant.

## II. THE PARTIES

5. Defendant IEC CORPORATION ("IEC") describes itself as "a premier national provider of postsecondary career education offering…programs in high-demand verticals such as healthcare, business, technology, transportation, and criminal justice. IEC is the parent company of UEI College, United Education Institute, Florida Career College and US Colleges" which operate post-secondary schools in Florida, Georgia, Texas, Arizona and California.

6. IEC is a Delaware Corporation located at 16485 Laguna Canyon Rd. Ste. 300 in Irvine, California.

7. Upon information and belief, IEC either owns Florida Career College Inc. or it does business in Florida and Texas under that name.

8. Defendant INTERNATIONAL EDUCATION CORPORATION ("IECORP") was a California corporation until at least March 13, 2010.

9. Upon information and belief, IECORP merged with IEC in 2010 with the latter assuming all of the former's assets, obligations and liabilities.

10. Defendant FLORIDA CAREER COLLEGE INC. ("FCC") was a Florida corporation until at least June 5, 2003.

11. Though the Defendants' website describes IEC as the "parent company" of FCC, FCC does not appear to be an active registered corporation in Florida, Texas, California or Delaware.

12. Upon information and belief, FCC is either a wholly owned subsidiary of IEC or it is a trade name of IEC's operations in Florida and Texas.

13. FCC operates 10 campuses throughout the state of Florida and one campus in Houston, TX. Its main campus is located at 1321 S.W. 107th Ave, Ste. 201B, Miami, Florida.

14. Relator LIDA ORTIZ was employed by Defendants as the Campus Program Manager at the Miami campus of FCC between August 2017 and January 19, 2018.

15. Relator was responsible for ensuring compliance with applicable federal and state laws and regulations including, especially, accreditor standards.

16. Relator was also responsible for monitoring campus metrics related to retention, attendance, completion, and licensure/certification outcome.

17. In her role as Campus Program Manager, Relator witnessed widespread improper conduct designed to ensure FCC's continued eligibility for participation in federal student aid programs, as well as, to maintain or increase the number of students enrolled at FCC receiving federal student aid with the goal of increasing Defendants' profits.

### III.   JURISDICTION AND VENUE

18. Venue and jurisdiction are the same under the FCA. 31 U.S.C. § 3732. A plaintiff may bring an action in any judicial district in which any Defendant may be found or in which any proscribed act occurred. 31 U.S.C. § 3732(a). The United States District Court for the Southern

District of Florida has jurisdiction and venue for any Complaint brought in the matter because Defendant FCC is located in this district and many of the proscribed acts occurred in this district.

19. Relator is not aware that the allegations in this Amended Complaint have been publicly disclosed. Further, to the extent that any of the information in this Amended Complaint may have been publicly disclosed, Relator's allegations in this Amended Complaint are not based on such public disclosures.

20. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and/or a written disclosure of substantially all material evidence and material information in their possession contemporaneous with the filing of the Complaint. Relator complied with this provision by serving her pre-suit Disclosure Statement with attached exhibits upon James Weinkle, Esq. Assistant United States Attorney for the Southern District of Florida on December 13, 2018.

21. In compliance with 31 U.S.C. §3730(b)(2), Relator served copies of this Amended Complaint upon the United States Attorney for the Southern District of Florida and upon the Attorney General of the United States.

22. In further compliance with 31 U.S.C. § 3730(b)(2), this Amended Complaint is filed in camera and will remain under seal for a period of at least 60 days and shall not be served on the Defendants until the Court so orders.

## IV.   THE FALSE CLAIMS ACT

23. Originally enacted in 1863, Congress substantially amended the FCA in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained because of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

24. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval;" or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim;" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions is liable for a civil penalty of up to $11,000 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government.

25. Significantly, the FCA imposes liability where the conduct is merely "in reckless disregard of the truth or falsity of the information" and further clarifies that "no proof of specific intent to defraud is required." 31 U.S.C. 3729(b)(1).

26. The FCA also broadly defines a "claim" as one that includes

any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that —

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government —

    i. provides or has provided any portion of the money or property requested or demanded; or

    ii. will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(b)(2)(A).

27. The *qui tam* provision of the FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the

Government and to share in the proceeds of any recovery. The complaint must be filed under seal without service on any Defendant.

28. The complaint remains under seal while the Government investigates the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

## V. THE HIGHER EDUCATION ACT AND ELIGIBILITY FOR TITLE IV LOAN AND GRANT PROGRAMS

29. Title IV of the HEA ensures that students have access to higher-education institutions through grants and other forms of financial assistance. See 20 USC § 1070.

30. The Secretary of Education is charged with creating programs to carry out the purposes of the HEA. Id. § 1070(b).

31. These programs include the federal Pell Grants, the Federal Family Educational Loan ("FFEL") program, the William D. Ford Federal Direct Loan Program and the Federal Perkins Loan Program. 20 USC §§ 1070a, 1071-1087, 1087a-j, 1087aa-ii respectively.

32. Each of the Title IV programs requires that educational institutions comply with specific requirements as a prerequisite to obtaining federal funds.

33. To become eligible to receive Title IV funds under these programs, each institution must enter into a Program Participation Agreement ("PPA") with the Department of Education ("DOE"). 20 U.S.C. § 1094(a), 34 CFR § 668.14(a)(1).

34. PPAs expressly "condition the initial and continuing eligibility of the school to participate in a program upon compliance with" the requirements of 20 U.S.C. § 1094 and 34 C.F.R. § 668.14.

35. The HEA and the PPA explicitly require that schools

> Will not provide any commission, bonus or other incentive payment based directly or indirectly on success in securing enrollments or financial aid to any persons or entities engaged in any student recruiting or admission activities or in making decisions regarding the award of student financial assistance.

20 U.S.C. § 1094(a)(20), 34 C.F.R. § 668.14(b)(22).

36. As a further condition of eligibility to participate in Title IV programs, an institution of higher education must be accredited to qualify for federal student assistance funding. 34 CFR § 600.4(a)(5).

37. While the federal government does not accredit institutions of higher education directly, the Secretary of Education is responsible for establishing the criteria under which accrediting agencies operate. 20 USC § 1099B.

38. In addition, the Secretary must publish a list of nationally recognized accrediting agencies that the Secretary deemed to be reliable authorities.

39. For the time period relevant to the allegations herein, the Defendants have been accredited by the Accrediting Counsel for Independent Colleges and Schools ("ACICS").

40. ACICS reviews its accredited schools for performance according to a number of metrics including "retention, placement, and licensure or certification examination pass rates."

41. Each PPA states that "[t]he execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program."

42. To maintain its eligibility, each year the institution must also provide the DOE with an annual compliance audit and financial statements prepared by independent auditors. 20 U.S.C. § 1094(c)(a)(A); 34 C.F.R. § 668.23.

43. These audit reports are used to determine whether schools are adhering to the applicable requirements for funding, including the incentive compensation ban.

44.     As a required part of the audit, Defendants expressly certify that they comply with the Title IV programs, including the incentive compensation ban and the accreditation requirement.

45.     Once a school becomes eligible to receive Title IV funds by entering into a PPA, claims for payment of those funds can be made in various ways. Under some programs, such as the Pell Grant program, students submit requests for funding directly to the DOE while under other programs, such as the Guaranteed Student Loan program and the Federal Family Education Loan Program, students and schools jointly submit requests for loans to private lenders which are guaranteed by state guaranty agencies that are, in turn, insured by the DOE which is financially responsible in the event of a student default.

46.     With respect to all Title IV programs, the disbursement of federal funds is made only if required statements of eligibility are supplied by the schools that are necessary for requests for payment to be considered.

## VI. DEFENDANTS ENGAGED IN NUMEROUS IMPROPER ACTS IN VIOLATION OF THE CONDITIONS OF ELIGIBILITY FOR PARTICIPATION IN TITLE IV PROGRAMS

### A. Defendants Falsified Attendance Records

47.     Defendants knowingly falsified student attendance records showing students attending classes when those students were not in attendance.

48.     Defendants did this to maintain their eligibility for Title IV funding, which requires satisfactory academic progress measured by, inter alia, student retention.

49.     Inflated retention rates not only ensure continued eligibility for Title IV funding but also translate directly into additional revenue from tuition and federal aid for students who would otherwise have been dropped from their courses for excessive absences or withdrawn themselves from the school.

50. One particular example of the conduct alleged arose from a meeting of a class entitled "Introduction to UNIX/LINUX," taught by Norlant Paredes, which was scheduled to meet from 6:00 p.m. to 11:00 p.m. on August 9, 2017. Eight students were enrolled in the course but on that day only three students were in attendance. Notwithstanding, Defendants produced an attendance sheet with falsified student signatures indicating that five students were in attendance.

51. The particular example of Defendants' conduct described in the immediately preceding paragraph was not an isolated or rare occurrence but is rather illustrative of rampant misconduct.

52. In a related example, Defendants terminated an instructor at the Lauderdale campus of FCC for refusing to falsely inflate her attendance records. The former instructor's name is Nancy Joseph.

### B. Defendants Falsified Class Schedules

53. Defendants knowingly falsified class schedules showing instructors teaching two different classes at the same time.

54. One particular example of the alleged conduct involved two courses purportedly taught by instructor Lawrence Duhaney in December 2017.

55. Instructor Duhaney was simultaneously listed as teaching two courses whose meeting times overlapped by two-and-a-half hours. Specifically, Instructor Duhaney was listed was teaching a "Communications" course which was scheduled to meet from 6:00 p.m. to 11:00 p.m. on Monday through Thursday and simultaneously listed as teaching an "Office Administration" scheduled to meet from 3:30 p.m. to 8:30 p.m. on Monday through Thursday.

56. As Instructor Duhaney could not teach both classes during the time when they overlapped, i.e., 6:00 p.m. to 8:30 p.m. on Monday through Thursday, Defendants falsified course

schedules in this manner to increase the number of courses available for which students could be enrolled, for which tuition could be charged and for which federal student aid could be received.

57. The particular example of Defendants' conduct described in the immediately preceding paragraph was not an isolated or rare occurrence but is rather illustrative of rampant misconduct.

### C. Defendants Falsified Student Grades

58. Defendants knowingly falsified student grades and pressured instructors to award grades that the students did not earn.

59. This was done for at least two reasons. First, the false higher grades make it less likely that the student would drop out, thus inflating the Defendants' retention rates and ensuring its re-accreditation and continued eligibility for Title IV programs. Second, the inflated retention rates translated directly into additional revenue from tuition for students who may otherwise have dropped out.

### D. Defendants Delayed Student Withdrawals

60. Defendants deliberately delayed student withdrawals to inflate retention rates for the dual purpose of ensuring continued eligibility to receive Title IV funds and to retain the tuition from students who would otherwise have withdrawn.

61. Relator is personally aware of particular examples where students asked the office of the Registrar to withdraw him or her from a course before the deadline for receiving a tuition refund only to find that the actual withdrawal was processed after the deadline and that the student had unwittingly forfeited the tuition paid on his or her behalf.

62. In addition to the financial harm, the student was further harmed because the class would then show up on his or her transcript as a withdrawal.

### E. Defendants Induced Student Enrollment through Misrepresentation

63. Defendants induced students to enroll through misrepresentation.

64. Specifically, Spanish-speaking students were told by admissions personnel that lack of proficiency in English would not be an obstacle to successful completion of the program in which they enrolled. Such students enrolled based on this misrepresentation.

65. Particular examples of this conduct involved Spanish-speaking students Ana Maria Paz, Gladys Ramirez, and Johnaisy de Jesus.

66. In all three cases, Defendants induced the students to enroll based on the misrepresentation that their lack of proficiency in English would not prevent them from successfully completing their program. Defendants then assisted the students in obtaining financial aid to cover the tuition expenses.

67. In all three cases, the students stopped attending classes when they realized that they could not complete the program without first attaining proficiency in English.

68. The particular examples of Defendants' conduct described in the immediately preceding paragraphs were isolated or rare occurrences but are rather illustrative of rampant misconduct.

### F. Defendants Knowingly Enrolled Students without High School Diplomas or the Equivalent.

69. As noted above, federal laws that govern the award of Title IV, HEA program funds limit such awards to only "eligible" students.

70. To qualify as an eligible student, a student must have a high school diploma or its recognized equivalent, and must maintain satisfactory academic progress.

71. Defendants knowingly enrolled ineligible students who did not have high school diplomas or a recognized equivalent.

72. Defendants then knowingly received and retained Title IV funds to cover the tuition costs of these ineligible students.

### G. Defendants Awarded Incentive Pay to Admissions Officials.

73. As also noted above, federal laws prohibit schools from providing incentive pay to admissions officials based on the number of new students recruited, enrolled or retained. Such incentive pay encourages recruiters to engage in overly-aggressive tactics to enroll students, regardless of the students' qualification and ability to succeed.

74. Notwithstanding, Defendants paid commissions, bonuses or other incentive payments to its admissions officials based directly or indirectly on success in securing enrollments in direct contradiction of the law.

### H. Defendants' Conduct Was Pervasive Throughout Its Many Locations.

75. Defendants' conduct is not limited to the Miami campus of FCC where the Realtor worked.

76. Rather, as it resulted from pressure applied from the highest levels of the company, the conduct alleged above occurred and continues to occur at all Defendants' educational facilities whose students receive federal or state financial aid.

## VII. CONCLUSION

77. Defendants caused the United States to incur substantial damages by presenting, making, using or causing to be presented, made or used false or fraudulent claims to the Government concerning the Defendants' eligibility to participate in student aid programs under Title IV of the HEA and related state statutes.

78. The False Claims resulted in remuneration unlawfully received by Defendant. More specifically, Defendant violated numerous provisions of the FCA, including, but not limited to, the following: 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(1)(B).

79. The estimated total damages to the United States from the false and fraudulent claims and statements made as a result of the aforementioned actions are significant.

80. In light of the foregoing, Defendant is liable to the United States for civil penalties and treble damages.

## **CLAIMS FOR RELIEF**

### COUNT I
### False Claims Act: Presentation of False Claims
### 31 U.S.C. § 3729(a)(1)(A)

81. Relator repeats and incorporates by reference the allegations above as if fully contained herein.

82. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendant has "knowingly present[ed], or cause[d] to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval" in violation of 31 U.S.C. § 3729(a)(1).

83. As a result of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendant's unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## COUNT II
### False Claims Act: Making or Using a False Record or Statement to Cause Claim to be Paid
### 31 U.S.C. § 3729(a)(1)(B)

84. Relator repeats and incorporates by reference the allegations above as if fully contained herein.

85. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendant has "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement – *i.e.*, the false certifications and representations made or caused to be made by the Defendant – to get a false or fraudulent claim paid or approved by the Government" in violation of 31 U.S.C. § 3729(a)(2).

86. As a result of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial, and the United States is entitled to at least $5,000 and as much as $11,000 for each such false or fraudulent claim submitted on or before November 2, 2015 and up to $21,563 for violations committed after November 2, 2015, plus three times the amount of the damages sustained by the Government for each and every violation of 31 U.S.C. § 3729 arising from Defendant's unlawful conduct as described herein. See 28 C.F.R. §§ 85.3(a)(9).

## PRAYER FOR RELIEF

WHEREFORE, Relator, on behalf of the United States, demand judgment against Defendants, ordering that:

a. Defendants pay an amount equal to three times the amount of damages that the United States sustained because of Defendants' actions which Relator currently estimates to be in the millions of dollars, plus a civil penalty of not less than $5,500 and not more than

14

15

$11,000, or such other penalty as the law may permit and/or require, for each violation of 31 U.S.C. § 3729 et seq.;

b. Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730 and/or any other applicable provision of law;

c. Relator be awarded all costs and expenses of this action, including attorneys' fees as provided by 31 U.S.C. § 3730 and/or any other applicable provision of law;

d. Relator be awarded such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby demands trial by jury.

May 3, 2019

Michael C. Addison
Florida Bar No. 145579
Addison Law Office, P.A.
1304 Alicia Avenue
Tampa, Florida 33604-6406
Tel: (813) 223-2000
Fax: (813) 228-6000
m@mcalaw.net

ATTORNEYS FOR RELATOR